UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TOM HEDRICK, | CASE NO. 1:17CV2310 |
| Plaintiff, | |
| | JUDGE SARA LIOI |
| v. | Magistrate Judge George J. Limbert |
| NANCY A. BERRYHILL[1], | |
| ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| Defendant. | |

Plaintiff Tom Hedrick ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, Plaintiff asserts that the Appeals Council erred by: (1) adopting the administrative law judge's ("ALJ") RFC finding which did not adopt a periodic sit/stand limitation found by state agency physicians; and (2) mechanically applying the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Guidelines") and not considering his borderline age situation because he was four months away from the age of 50 when the ALJ's decision was made. ECF Dkt. #1. For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the ALJ and DISMISS Plaintiff's complaint in its entirety.

## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on March 10, 2014 alleging disability beginning January 17, 2013 due to Type II diabetes/neuropathy, asthma, severe sleep apnea, "left knee bone on bone," narcolepsy, and an enlarged liver. ECF Dkt. #12 ("Tr.") at 289-301, 315-344.[2] The Social

---

[1]On January 20, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to

Security Administration ("SSA") denied his applications initially and upon reconsideration. *Id.* at 217-247. Plaintiff requested a hearing before an ALJ, which was held on January 19, 2016. *Id.*at 248.

On March 23, 2016, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 62-71. On March 27, 2016, Plaintiff filed a request for review of the ALJ's decision by the Appeals Council. *Id*. at 53-58.

On June 29, 2017, the Appeals Council granted the request for review and explained in a Notice of Appeals Council Action letter to Plaintiff that it found that the ALJ's decision was not supported by substantial evidence and an error of law existed in the decision. Tr. at 10-11. The Appeals Council explained that the ALJ erred in finding at Step Four that Plaintiff had past relevant work as a marketing manager because the time in which he had worked in that position was less than the time required to learn the job and thus it was not past relevant work. *Id*. at 11.

The Appeals Council further indicated that despite the ALJ's erroneous finding, it was nevertheless proposing to adopt the ALJ's findings and conclusion that Plaintiff was not disabled. Tr. at 11. The Appeals Council explained that it was proposing to do so because the vocational expert ("VE") testified as to other jobs that a person with Plaintiff's RFC could perform that existed in significant numbers in the national economy pursuant to Rules 201.20 and 201.21 of the Guidelines. *Id.* The Appeals Council informed Plaintiff that he could send more evidence and request an appearance within thirty days before the Appeals Council would proceed with making a decision on the case*. Id.* at 11-12.

On September 8, 2017, the Appeals Council issued a decision adopting the pertinent findings and adopted the ALJ's decision that Plaintiff was not disabled. Tr. at 4-5. The Appeals Council held that it was not adopting the ALJ's finding that Plaintiff had past relevant work as a marketing manager, but it was finding that Plaintiff was not disabled because the VE had also testified that a hypothetical individual with Plaintiff's RFC could perform other sedentary jobs existing in significant numbers in the national economy pursuant to Rules 201.20 and 201.21. *Id.*

---

the page numbers assigned when the Transcript was filed in the CM/ECF system.

On November 2, 2017, Plaintiff filed the instant suit seeking review of the Appeals Council's decision. ECF Dkt. #1. He filed a brief on the merits on April 12, 2018, and Defendant filed her merits brief on June 13, 2018. ECF Dkt. #s 15, 17.

## II. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## III. STANDARD OF REVIEW

In the instant case, Plaintiff challenges two determinations made by the Appeals Council, who granted his request for review of the ALJ's decision and made its own decision. ECF Dkt. #15. The Appeals Council's decision is thus the final decision of the Commissioner in this case. *See* 20 C.F.R. §§ 404.981, 416.1581. However, the Appeals Council adopted many of the ALJ's findings and conclusions, including the ALJ's RFC for Plaintiff, which is one of Plaintiff challenges here. ECF Dkt. #12 at 4-6; ECF Dkt. #12 at 66. When the Appeals Council relies on or adopts the ALJ's

-3-

findings, "the substantial evidence standard of review applies to the findings regardless of whether they were made by the Appeals Council, the ALJ, or were made by the Appeals Council in reliance on the ALJ's findings." *Taylor v. Comm'r of Soc. Sec.,* No. 95-3767, 91 F.3d 144(Table), 1996 WL 400175, at *4, n.2 (6th Cir. July 16, 1996), unpublished. Thus, this Court should review the findings and conclusions that the Appeals Council adopted from the ALJ's decision concerning Plaintiff's RFC and should review the Appeals Council's decision to deny Plaintiff's request to elevate him to the higher age category based upon the Borderline Age Rule.

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

**IV.     PERTINENT FINDINGS FROM DECISIONS OF ALJ AND APPEALS COUNCIL**

On March 23, 2016, the ALJ made the following relevant findings in his decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
2. The claimant has not engaged in substantial gainful activity since January 17, 2013, the alleged onset date (20 CFR 404.15871 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: peripheral neuropathy, diabetes mellitus, degenerative joint disease, degenerative disc disease, chronic liver disease, obesity, epilepsy, asthma/emphysema, obstructive sleep apnea (OSA), and narcolepsy (20 CFR 404.15209(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 413.967(b) except the claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, he can stand and walk for 2 hours of an 8 hour workday and can sit for 6 hours of an 8 hour workday. He can use no foot controls, or push or pull bilaterally. He can never climb ladders, ropes and scaffolds and occasionally climb ramps and stairs as well as balance, stoop, kneel, crouch and crawl occasionally. He must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. He cannot perform commercial driving and must avoid all exposure to working at unprotected heights. He requires a cane, but to ambulate only.

6. The claimant is capable of performing past relevant work as a Marketing Manager. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined by the Social Security Act, from January 17, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. at 65-71. On September 8, 2017, the Appeals Council issued a decision which included the following relevant findings:

The claimant asked the Appeals Council to review the Administrative Law Judge's decision dated March 23, 2016. The Administrative Law Judge found the claimant "not disabled" within the meaning of the [sic]social Security Act from January 17, 2013 through March 23, 2016. On June 29, 2017, the Appeals Council notified the claimant and the representative that it had granted the request for review. In that notice, the Council proposed to issue a decision revising the Administrative Law Judge decision from finding the claimant could perform past relevant work to finding that there was other work that the claimant could perform in the national economy.

The Council also notified the claimant and the representative that it would consider a statement about the facts and the law in the case, or additional evidence if the additional evidence met the standard in the notice. In response, the claimant's representative asked the Appeals Council to consider that the claimant was within 4 months from reaching his 50th birthday on the date of the Administrative Law Judge's decision. The Appeals Council has considered the borderline age situation, but finds that, since the claimant's residual functional capacity falls between the light and sedentary exertional ranges, considering the claimant as older than his chronological age is not warranted.

* * *

Therefore we adopt the Administrative Law Judge's findings and conclusion that you were not disabled. However, we base this conclusion on a finding that you could perform other sedentary jobs existing in significant numbers in the national economy pursuant to Rules 201.20 and 201.21.

1. The claimant has not engaged in substantial gainful activity since January 17, 2013.

2. The claimant has the following severe impairments: peripheral neuropathy, diabetes mellitus, degenerative joint disease, degenerative disc disease, chronic liver disease, obesity, epilepsy, asthma/emphysema, obstructive sleep apnea, and narcolepsy. He does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR 404, Subpart P, Appendix 1.

3. The claimant's combination of impairments results in the following limitations on his ability to perform work-related activities: light work, except the claimant can lift, carry, push and pull 20 lbs. occasionally and 10 lbs. frequently, he can stand and walk for 2 hours of an 8 hour workday and can sit for 6 hours of an 8 hour workday. He can use no foot controls, or push or pull bilaterally. He can never climb ladders, ropes and scaffolds and occasionally climb ramps and stairs as well as balance, stoop, kneel, crouch and crawl occasionally. He must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases and poor ventilation. He cannot perform commercial driving and must avoid all exposure to working at unprotected heights. He requires a cane, but to ambulate only.

4. The claimant's alleged symptoms are not consistent with and supported by the evidence of record for the reasons identified in the body of this decision.

5. The claimant has no past relevant work.

6. The claimant is 50 years old, which is defined as closely approaching advanced age and has a high school education.

7. If the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 416.969 and Rule 201.20, Table 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled. Although the claimant's exertional and nonexertional limitations do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform.

8. The claimant is not disabled as defined in the Social Security Act at any time through the date of the Administrative Law Judge's decision, March 23, 2016.

*Id*. at 4-6.

## V. LAW AND ANALYSIS

### A. RFC WITH NO PERIODIC SIT/STAND OPTION

Plaintiff first asserts that the Appeals Council, who adopted the ALJ's RFC for him, erred by not adopting the periodic sit/stand option that two state agency reviewing physicians opined for him. ECF Dkt. #15 at 15-16. Plaintiff complains that the ALJ gave great weight to these opinions, but failed to include the sit/stand option and failed to explain why this option was not included in his RFC for Plaintiff. For the following reasons, the undersigned recommends that the Court find that the ALJ and the Appeals Council applied the proper legal standards and substantial evidence supports the decision not to include this sit/stand option.

In determining Plaintiff's RFC, the ALJ assigned great weight to the opinions of state agency reviewing physicians Drs. Hinzman and Green, who each included the limitation that Plaintiff must periodically alternate between sitting and standing in order relieve his pain and discomfort. ECF Dkt. #15 at 15, citing Tr. at 70. On June 23, 2014, Dr. Hinzman considered Plaintiff's impairments of peripheral neuropathy, obstructive sleep apnea, asthma, obesity, narcolepsy and abdominal pain, and the medical records related thereto, and he completed the physical RFC for the agency. Tr. at 169-172, 183-186. He opined based upon the evidence that Plaintiff could occasionally lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, and he could stand/walk up to 2 hours per day and sit about 6 hours in a 8-hour workday. *Id*. at 170, 185. He further opined that Plaintiff "must periodically alternate sitting and standing to relieve pain and discomfort." *Id*. Dr. Hinzman also opined that Plaintiff could not use foot controls or push/pull bilaterally, and he could occasionally climb ramps/stairs, balance, stoop, kneel and crouch, and never climb ladders, ropes, or scaffolds, or crawl. *Id*. He further opined environmental limitations for Plaintiff. *Id*. On September 10, 2014, Dr. Green issued an opinion upon Plaintiff's request for reconsideration which included his prior impairments and the additional assertions that he was on narcolepsy medication and he had worsened knee pain. *Id*. at 196-199. Dr. Green opined the same RFC as Dr. Hinzman,

including the opinion that Plaintiff "must periodically alternate sitting and standing to relieve pain and discomfort." *Id*. at 197.

A claimant's RFC is an assessment of "the most he can still do despite his limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing the RFC, the ALJ considers all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). While the ALJ must consider and weigh the medical opinions of both treating and agency medical sources, the final responsibility for determining the claimant's RFC is expressly reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2).

It is true that "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp.2d 813, 823–24 (S.D.Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id*.; 20 C.F.R. § 404.1527(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp.2d at 823–24. However, while an ALJ "'must consider findings of [s]tate agency medical and psychological consultants,' he is 'not bound by any findings made by [s]tate agency medical or psychological consultants.'" *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir.2002) (quoting 20 C.F.R. § 404.1527(f)(2)(i)).

The ALJ in this case addressed the opinions of the state agency doctors and assigned them great weight. Tr. at 70. He adopted many of their limitations for Plaintiff, including the lifting and standing/walking restrictions, the postural and environmental restrictions, and Plaintiff's need to use a cane to ambulate. *Id*. Thus, consistent with the regulations, the ALJ considered and weighed the agency physicians' findings. 20 C.F.R. § 404.1527(e)(2)(i).

However, the ALJ did not adopt or address the agency physicians' sit/stand limitation and he was not required to do so. The RFC determination is a determination expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec*, 114 Fed. App'x 194, 198 (6th Cir. 2004). Moreover, "[s]imply put, there is no legal requirement for an ALJ to explain each limitation or restriction he

adopts or, conversely, does not adopt from a non-examining physician's opinion, even when it is given significant weight."*Smith v. Comm'r of Soc. Sec.*, No. 5:11CV2104, 2013 WL 1150133 (N.D. Ohio, Mar. 19, 2013); *see also Taylor v. Colvin*, No. 1:13CV222, 2013 WL 6162527, at *15 (N.D. Ohio 2013) and *White v. Comm'r of Soc. Sec.,* - - -F.Supp.2d - - - , No. 5:12CV1637, 2013 WL 4817673, at *16 (N.D. Ohio 2013). Since the ALJ properly considered and weighed the agency physicians' opinions, but was not bound by their opinions or legally required to include their specific limitations in his RFC for Plaintiff or explain why he did not adopt all of their limitations, the ALJ applied the proper legal standards.

Further, a review of the ALJ's decision in its entirety shows that substantial evidence supports the RFC that he determined for Plaintiff, which did not include the periodic sit/stand option opined by the state agency physicians. The ALJ explained that in determining Plaintiff's RFC, he considered Plaintiff's symptoms, the medical evidence, and the opinion evidence in the record. Tr. at 66. He then reviewed the medical evidence of record, including Plaintiff's medical history, medical signs and lab findings, which included asthma, obstructive sleep apnea, edema at times in his legs, hand pain, obesity, and diagnoses of peripheral neuropathy, diabetes mellitus, degenerative joint disease, and chronic liver disease. *Id.* at 66-70. The ALJ discounted Plaintiff's credibility concerning his complaints of pain and limitations, noting that Plaintiff continued to smoke despite serious respiratory conditions and doctor warnings to stop. *Id.* at 67. The ALJ also noted that Plaintiff had a "patchy" work history, which was also a factor in discounting his credibility. *Id*. The ALJ also cited and discounted Plaintiff's allegations that he had problems using his hands, he needed to nap during the day, and he needed to elevate his legs, finding that no medical source statement or other indication in the record existed to support these allegations. *Id*.

As to Plaintiff's peripheral neuropathy, diabetes mellitus, degenerative joint disease and chronic liver disease, the ALJ reviewed Plaintiff's hospitalizations in 2011 and 2012 for leg and foot swelling and generalized fatigue. Tr. at 67. He noted diagnoses of liver disease and hepatic steatosis during that time. *Id*. However, the ALJ cited to medical records in April, September, November, and December of 2013 showing "no edema"on physical examination, and thereafter "intermittent lower extremity edema," some neuropathy, and hypertrophied toenails, although

Plaintiff could still ambulate with a cane. *Id.* at 68. The ALJ also noted that a March 2014 examination indicated that Plaintiff had intact sensation in all extremities, and normal strength and was getting relief from Neurontin and had a left knee injection. *Id.* He cited to spine imaging which showed degenerative changes in the thoracic and lumbar spine, but preserved disc spaces, only marginal osteophytes, and maintained facet joints. *Id.*; Tr. at 574. The ALJ also noted that December 2014 notes indicated only a "trace" of edema. Tr. at 68, citing Tr. at 1010. He further cited to a physical examination in March 2015 where, despite hip and back pain, Plaintiff had only mild pain on range of motion of the lumbar spine, and he had normal reflexes, normal strength and a normal gait. Tr. at 68, citing Tr. at 1102. The ALJ also cited to records showing that in October of 2015, Plaintiff's diabetes was under control and doctors felt that Lasix was no longer necessary and he had normal range of motion and no edema or sensory deficit. Tr. at 68, citing Tr. at 1141-1142. He was diagnosed with left knee pain and Type II diabetes mellitus, controlled. *Id.* at 1143. The ALJ further cited to an October 16, 2015 progress note from Certified Nurse Practitioner ("CNP") Todd Markowski, of the pain management center where Plaintiff was referred for pain secondary to neuropathy, osteoarthritis in his knees and lumbar degenerative disc disease. Tr. at 68, citing Tr. at 1166. Plaintiff indicated to CNP Markowski that the medications of Ultram and Neurontin that he was prescribed were improving his ability to perform his daily living activities. *Id.* at 1166. His 2013 bilateral knee x-ray was reviewed, which showed mild degenerative narrowing of the right patella, but marked narrowing of the left knee joint with spurring. *Id.* at 1167. It was noted that Plaintiff was too high a risk to undergo a total knee replacement. *Id.* at 1166. His lumbar spine x-ray from 2014 showed degenerative changes with preserved disc spaces, maintained vertebral body height, and marginal osteophytes at all levels. *Id.* at 1167.

In addition to reviewing the medical records, Plaintiff's testimony, and the agency physician statements, the ALJ addressed the only other determination of Plaintiff's abilities in the record, a July 30, 2014 medical source statement from CNP Dan Gauntner from Neighborhood Family Practice. Tr. at 773. CNP Gauntner identified Plaintiff's medical findings of chronic low back pain, narcolepsy, and use of a cane to walk, and he opined that Plaintiff could occasionally and frequently lift up to 5 pounds, stand/walk a total of 1 hour with interruptions, he could sit for 30 minutes total

-10-

of an 8-hour workday and could rarely climb, balance, stoop, crouch, crawl, and kneel. *Id.* at 772. He further opined that Plaintiff could occasionally reach, push/pull, and perform fine manipulation, he could frequently perform gross manipulation, and he had restrictions for heights and moving machinery. *Id*. He also opined that Plaintiff's pain was of moderate severity and it would cause interference with Plaintiff's concentration, take him off task and cause absenteeism. *Id*. CNP Gauntner also opined that Plaintiff would require 4 additional unscheduled rest periods per 8-hour workday due to his conditions. *Id*.

The ALJ gave CNP Gauntner's opinion only partial weight, explaining that a CNP is not an acceptable medical source and Plaintiff had testified that CNP Gauntner based his opinion on Plaintiff's subjective complaints which he completed on a form. Tr. at 70. The ALJ indicated that the reliance upon Plaintiff's subjective complaints and a lack of objective medical findings and evidence supporting the opinion discounted the weight given to this opinion. *Id*. The ALJ nevertheless limited Plaintiff to light work with standing/walking for 2 hours of an 8-hour day, no use of foot controls, no pushing/pulling bilaterally, no climbing ladders, ropes or scaffolds, occasionally climbing ramps and stairs, occasionally balancing, stooping, kneeling, crawling and crouching, avoiding concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and no commercial driving or exposure to unprotected heights. *Id.* at 66. The ALJ also noted that Plaintiff required a cane, but only for ambulation. *Id.*

Based upon a lack of medical or other support in the record for a periodic sit/stand option, the ALJ properly determined that Plaintiff did not require this limitation and substantial evidence supports this determination. The ALJ addressed the opinions of Drs. Hinzman and Green and attributed great weight to the limitations that he found supported by the evidence. However, he noted the "largely mild and intermittent findings" in the record and he further explained that "[f]urther restriction is unwarranted as his conditions are adequately managed with his current care, the claimant's subjective allegations are unreliable, and there is no contrary medical source statement from an acceptable medical source to consider and weigh." Tr. at 70. Thus, the ALJ adequately and properly reviewed the evidence before him in determining Plaintiff's RFC, including

-11-

the agency examining physicians' opinions, and substantial evidence supports his decision to not include the sit/stand option in his RFC for Plaintiff.

### B. BORDERLINE AGE SITUATION

Plaintiff also asserts that the Appeals Council erred by "mechanically applying" the Medical-Vocational Guidelines in 20 C.F.R. part 404, subpart P, appendix 2 and erred by finding that an older chronological age for him was not warranted. ECF Dkt. #15 at 17-19. Plaintiff points out that he was 49 years, 8 months old at the time of the ALJ's decision and therefore his borderline age situation should have been considered and he should have been considered as an individual closely approaching advanced age because he was only four months away from his 50th birthday and a finding of disability would result using 20 C.F.R. Part 404, Subpart P, Appendix 201.12 or 201.14. *Id.* at 18. Plaintiff contends that the Appeals Council erred in finding that his RFC fell between the light and sedentary ranges because the VE in his case testified that only sedentary work was available for a hypothetical individual with the RFC that the ALJ accepted. *Id*. He also asserts that he had additional vocational adversities with additional impairments that infringe on the remaining sedentary occupational base and therefore he is entitled to the higher age range application. *Id.*

The relevant regulation, 20 C.F.R. § 404.1563, provides in pertinent part:

> Your age as a vocational factor.
>
> a) General. "Age" means your chronological age. When we decide whether you are disabled under § 404.1520(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience. We will not consider your ability to adjust to other work on the basis of your age alone. In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment, as we explain in paragraphs (c) through (e) of this section. If you are unemployed but you still have the ability to adjust to other work, we will find that you are not disabled. In paragraphs (b) through (e) of this section and in appendix 2 to this subpart, we explain in more detail how we consider your age as a vocational factor.
>
> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.*

-12-

>(c) Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2.
>
>(d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

20 C.F.R. §§ 404.1563 (emphasis added). According to the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), in these borderline age situations, the ALJ uses a "sliding scale approach" in determining which age category to apply. *Caudill v. Comm'r of Soc. Sec.*, 424 Fed. App'x 510, 516, 2011 WL 2039658 (6th Cir. 2011), citing Application of the Medical–Vocational Guidelines in Borderline Age Situations, HALLEX II–5–3–2, 2003 WL 25498826. In using the "sliding scale approach," "the claimant must show progressively more additional vocational adversity(ies)—to support use of the higher age—as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens." *Id*. Examples of such "additional vocational adversities" include being barely literate in English, having only a marginal ability to communicate in English, and having work experience in unskilled jobs in one isolated industry or work setting. *Id.*

*In Bowie v. Commissioner of Social Security*, 539 F.3d 395, 397–398 (6th Cir. 2008), the Sixth Circuit cited to HALLEX II-5-3-2 and while acknowledging that it was not binding, nevertheless reviewed it and used it for guidance. The Sixth Circuit noted that a claimant presents a borderline age situation when: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability. *Id. Bowie* also held that the regulations did not "impose a per se procedural requirement" on an ALJ to address borderline age situations and explain why he or she determined a particular age category. *Id.* The Court found in *Bowie* that Bowie did not present "additional vocational adversities" that justified placing her in the higher age category even though she was less than two months from her 50th birthday, it was determined that she had a capacity for unskilled sedentary work, and she could not return to her past relevant work as an assembler in the automobile industry. *Id.* The *Bowie* Court

looked to the examples cited in the HALLEX II-5-3-2 and found that discussion by an ALJ as to the borderline age situation would be merited and additional vocational adversities may be significant "where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id*. at 401, citing Rule 201.18, App.2 to Subpart P of 20 C.F.R. § 404; HALLEX II-5-3-2.

In *Caudill v. Commissioner of Social Security*, the Sixth Circuit rejected additional vocational adversities that were more eroding and significant than those presented here. In that case, the claimant was two months away from turning 55 years old, he had an eleventh grade education but read at a second-grade level, he was diagnosed with a developmental reading disorder, and he had difficulty reading and writing. 424 Fed. App. at 516-518. The *Caudill* Court compared his alleged additional vocational adversities to those presented in the hypothetical presented by the *Bowie* Court, and to the additional adversities alleged by Bowie herself, and the *Caudill* Court found that Bowie's adversities were more similar to the hypothetical adversities than Caudill and Bowie was deemed not to have significant enough additional vocational adversities to warrant the application of the higher age category as she had two of the same adversities as in the hypothetical. *Id.* The *Caudill* Court found that Caudill had only the work history adversity presented in the hypothetical as he worked in the isolated industry of mining, while Bowie had an unskilled work history and a sedentary work limitation, two of the vocational adversities. *Id.* The *Caudill* Court found that Caudill had a conflicting and contradictory evidence of literacy. *Id.*

Applying *Bowie* and *Caudill* to the instant case, the undersigned recommends that the Court find that Plaintiff's alleged additional vocational adversities in the instant case do not rise to the level of significance as those cited as examples in *Bowie,* and they are more similar to those considered insufficient in *Bowie* and *Caudill.* Plaintiff in this case cites to his need of a cane for walking, the need to alternate between sitting and standing, and he cites to the other postural restrictions applied by the ALJ in his RFC. ECF Dkt. #15 at 18. The undersigned has recommended above that the Court find that substantial evidence supports the ALJ's decision not to include the

periodic sit/stand limitation in Plaintiff's RFC and thus this limitation should be excluded from consideration as an additional vocational adversity. Further, the limitations of using a cane to walk and the other postural limitations as found by the ALJ did not infringe upon Plaintiff's remaining occupational base as the additional vocational adversities presented in the HALLEX or as the hypothetical presented in *Bowie*. In the instant case, the VE testified that a hypothetical individual who needed to use a cane for ambulation and had the rest of the ALJ's RFC and the postural limitations relied upon by Plaintiff, could perform the other sedentary jobs of: a document specialist, of which 120,000 jobs existed in the national economy; a receptionist, of which 160,000 such jobs existed in the national economy; and a food and beverage order clerk, of which 140,000 such jobs existed in the national economy. Such numbers do not erode the remaining occupational base.

For these reasons, the undersigned recommends that the Court find that substantial evidence supports the Appeals Council's decision to find that Plaintiff's use of a cane to walk, a sedentary work limitation, and the postural restrictions found by the ALJ in his RFC were not sufficiently significant to rise to the level of the additional vocational adversities necessary to warrant a finding in favor of a higher age category.

## VI.  CONCLUSION AND RECOMMENDATION

For the following reasons, the undersigned recommends that the Court AFFIRM the decision of the Commissioner and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: November 14, 2018                    */s/George J. Limbert*
                                            GEORGE J. LIMBERT
                                            UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).